ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ELIESNER VERA SOTO<br><br>Parte Peticionaria<br><br>v.<br><br>KRYONYX CORP.,<br>QUERELLADOS<br>DESCONOCIDOS A,B,C,<br>QUERELLADOS<br>DESCONOCIDOS 1,2,3<br><br>Parte Recurrida | TA2026CE00254 | *Certiorari,*<br>procedente del Tribunal<br>de Primera Instancia,<br>Sala Superior de San<br>Juan<br><br>Caso Núm.:<br>SJ2025CV05892<br><br>Sala: 1003<br>Expropiaciones<br><br>Sobre:<br>Procedimiento Sumario<br>bajo Ley Núm. 2 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de marzo de 2026.

Compareció ante este Tribunal la parte peticionaria, el Sr. Eliesner Vera Soto (en adelante, el "señor Vera Soto" o "Peticionario"), mediante recurso de *certiorari* presentado el 2 de marzo de 2026. Nos solicitó la revocación de la *Orden* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), el 27 de febrero de 2026. Mediante el aludido dictamen, el foro recurrido declaró "Ha Lugar" la "**Solicitud de Orden Protección**" presentada por Kryonyx Corp. (en adelante, "Kryonyx" o "Recurrido").

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, prescindimos de la comparecencia de la parte recurrida, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal,[1] y por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración y *confirmamos* la *Orden* recurrida.

---

[1] *Véase, Regla* 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re* Aprob. Enmdas. Reglamento TA, 2025 TSPR 141, pág. 15, 216 DPR __ (2025).

**I.**

El caso de epígrafe tuvo su origen el 27 de junio de 2025, con la presentación de una "**Querella**" por parte del señor Vera Soto en contra de Kryonyx, Nomar Camilo Jane (en adelante, el "señor Camilo Jane"), Roberto Ubiñas Kinney (en adelante, el "señor Ubiñas Kinney") y otros codemandados de nombres desconocidos. Mediante la misma, alegó que el 16 de abril de 2021, el Recurrido le extendió una oferta de empleo para ocupar el puesto de ejecutivo de ventas. Señaló que dicha oferta fue aceptada el 20 de abril de 2021 y formalizada mediante la firma de las partes, en presencia del señor Ubiñas Kinney, quien fungía como CEO de Kryonyx. Indicó que sus funciones consistían en identificar y gestionar clientes potenciales, con el propósito de promover y vender los productos y servicios ofrecidos por Kryonyx. Sostuvo que la relación laboral inició el 3 de mayo de 2021 y se extendió hasta el 6 de septiembre de 2024, esto es, tres (3) años y cuatro (4) meses.

Asimismo, alegó que Kryonyx le ofreció una compensación que incluía un salario anual de $60,000.00, una asignación anual para automóvil de $15,000.00 y un seguro de salud con cobertura familiar valorado en $3,500.00. De igual forma, indicó que se contemplaba un depósito anual aproximado de $3,000.00 en un plan 401(k), equivalente a un cinco por ciento (5%), así como un bono mínimo de Navidad de $600.00. Añadió que también se le brindaría la oportunidad de generar ingresos adicionales mediante un esquema de comisiones y bonificaciones, los cuales podrían alcanzar entre $100,000.00 y $150,000.00. Explicó que dichas comisiones se determinaban conforme a tres factores principales: (1) el cumplimiento de las cuotas establecidas, (2) el margen o rentabilidad de la cuenta y (3) el tipo de cuenta en la cual se efectuara la venta. Precisó, además, que en caso de alcanzar un cumplimiento mensual entre el 0% y el 49% de la cuota, no tendría derecho a percibir comisión o bonificación alguna.

Sostuvo que el 26 de agosto de 2024 presentó su renuncia a Kryonyx, la cual sería efectiva el 6 de septiembre de 2024, debido a que recibió una nueva oferta de empleo. Alegó que, tras su salida de la empresa, reclamó

el pago de determinadas comisiones y bonificaciones que, según indicó, la empresa le adeudaba y que había generado como resultado de su desempeño en la venta de cuentas nuevas, cuentas existentes y otras cuentas de la compañía para Kryonyx. Señaló que, luego de realizar varios requerimientos de pago, el 4 de octubre de 2024, Kryonyx emitió un cheque a favor de la parte querellante por la cantidad de $11,231.91, suma que resultó de $15,464.88 menos $4,232.97 correspondientes a retenciones de nómina.

Expresó que, al efectuar el pago por la suma antes indicada, Kryonyx manifestó que dicho desembolso constituía el pago final correspondiente al cuadre de comisiones. No obstante, alegó que la empresa no tomó en consideración diversas partidas adeudadas, incluyendo comisiones que, según afirmó, aún no habían sido liquidadas, así como otros reclamos respecto de los cuales no había recibido respuesta afirmativa por parte de Kryonyx. Ante tales circunstancias, el señor Vera Soto le solicitó al foro de instancia que declarara "Ha Lugar" su "**Querella**" y, en consecuencia, condenara a Kryonyx al pago de la suma total de $103,174.54, por concepto de comisiones y bonificaciones presuntamente adeudadas y no satisfechas.

En respuesta a lo anterior, el 21 de julio de 2025, Kryonyx presentó su "**Contestación a Querella**", mediante la cual negó la mayoría de las alegaciones formuladas en su contra. En particular, sostuvo que el señor Vera Soto renunció a su empleo en Kryonyx el 6 de septiembre de 2024 y que, conforme a los términos que regían su contratación y relación laboral, no tenía derecho a percibir comisiones relacionadas con productos o servicios que se concretaron con posterioridad a su renuncia.

Asimismo, afirmó que el Peticionario no es elegible para el pago de las comisiones reclamadas, toda vez que presentó su renuncia antes de que los servicios fueran prestados y/o facturados. De igual manera, planteó que es el propio señor Vera Soto quien adeuda compensación a Kryonyx por los daños ocasionados como resultado de su presunto incumplimiento con las obligaciones contractuales de confidencialidad y no competencia, pactadas válidamente al inicio de la relación laboral y que, según alegó, han sido

infringidas. A tenor con lo anterior, solicitó al Tribunal que declarara "No Ha Lugar" la "**Querella**" presentada en su contra.

En ese contexto, el 21 de julio de 2025, el señor Camilo Jane y el señor Ubiñas Kinney presentaron una "**Moción de Desestimación Parcial**", mediante la cual argumentaron que la "**Querella**" no exponía una reclamación que justificara la concesión de un remedio. Asimismo, expresaron que, en ausencia de una disposición legal que impusiera a supervisores u oficiales corporativos la obligación de responder personalmente por reclamaciones de salarios, procedía la desestimación de las reclamaciones instadas en su contra.

Posteriormente, el 10 de agosto de 2025, el señor Vera Soto presentó una moción intitulada **"Réplica a 'Moción de Desestimación Parcial'"** (en adelante, la Oposición), mediante la cual sostuvo que su reclamación era válida y se encontraba debidamente sustentada en las alegaciones detalladas en la "**Querella**". De igual manera, argumentó que la inmunidad corporativa no era absoluta, pues podía ceder en circunstancias en las cuales su reconocimiento equivaldría a permitir un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública o justificar una inequidad, entre otras. Además, destacó que el pago de las comisiones reclamadas estaba sujeto a la evaluación, aprobación y autorización directa de ambos ejecutivos, en sus respectivas funciones como *Chief Operations Officer* y *Chief Executive Officer.* A la luz de lo anterior, solicitó al Tribunal que declarara **"No Ha Lugar"** la referida "**Moción de Desestimación Parcial"**.

Posteriormente, el 30 de agosto de 2025, el TPI emitió una *Sentencia Parcial Final* mediante la cual desestimó las reclamaciones presentadas contra el señor Camilo Jane y el señor Ubiñas Kinney. Ello, al concluir que las alegaciones contenidas en la "**Querella"** se dirigieron al ente corporativo y no imputaban a dichos oficiales actuaciones torticeras independientes, ni conductas discriminatorias que razonablemente pudieran considerarse como generadoras de una fuente separada de responsabilidad personal.

Posteriormente, el 4 de noviembre de 2025, el señor Vera Soto presentó una "**Moción Informativa Sobre Envío Interrogatorio y Requerimiento de Documentos**". El 18 de noviembre de 2025, Kryonyx presentó una "**Moción Informando Envío de Descubrimiento de Prueba**" notificando que envió al señor Vera Soto un *Aviso de Toma Duces Tecum* para el 5 de enero de 2026. El 19 de noviembre de 2025, el Peticionario presentó una **"Objeción al Aviso de Toma de Deposición Duces Tecum"**, mediante la cual alegó que la Ley Núm. 2, *infra*, dispone que no se permitirá la toma de deposiciones a testigos sin la previa autorización del tribunal, luego de que este determine la necesidad de recurrir a dicho mecanismo procesal. Asimismo, señaló que la información solicitada por Kryonyx en el referido *Aviso de Toma de Deposición Duces Tecum,* ya obra en su expediente de empleado. De igual forma, indicó que toda comunicación relacionada con las comisiones se realizaba mediante correos electrónicos intercambiados con oficiales y/o agentes del Recurrido, particularmente con personal de los departamentos de Finanzas, Recursos Humanos y Ventas, cuya identidad, según sostuvo, es conocida por Kryonyx. En atención a lo anterior, solicitó la expedición de una orden protectora respecto a los documentos requeridos.

Posteriormente, el 1 de diciembre de 2025, Kryonyx presentó su correspondiente **"Oposición a Solicitud de Orden Protectora"**, mediante la cual alegó que el señor Vera Soto pretende que el Tribunal interprete que las disposiciones aplicables a los testigos resultan igualmente extensivas a las partes. De igual manera, argumentó que su postura se fundamenta en jurisprudencia de la cual surge expresamente que las disposiciones invocadas no son de aplicación a la Ley Núm. 2*, infra.* En virtud de lo anterior, le solicitó al Tribunal que declarara **"No Ha Lugar"** la solicitud de orden protectora. El 9 de diciembre de 2025, el foro de instancia emitió una *Resolución Interlocutoria* mediante la cual declaró "Sin Lugar" la **"Moción Solicitando Orden Protectora"**.

Posteriormente, el 13 de enero de 2026, el señor Vera Soto presentó una **"Moción Urgente en Solicitud de Vista"**, en la cual alegó que, a

menos de veinticuatro (24) horas de la fecha y hora para la toma de su deposición, se le notificaron ciertas objeciones mediante una misiva suscrita por el Lcdo. Luis Manuel Rodríguez López. Expresó que dicha actuación no solo alteraba la naturaleza sumaria del procedimiento aplicable al presente caso al dejar sin efecto la deposición que había sido pautada con más de un mes de antelación, sino que además constituía una actuación que redundaba en un perjuicio evidente y exclusivo para el Peticionario. En consecuencia, le solicitó al Tribunal que señalara una vista urgente para atender y dilucidar dicho asunto.

En respuesta a lo anterior, Kryonyx presentó su **"Oposición a Solicitud de Vista y Solicitud de Imposición de Sanciones"**, mediante la cual manifestó que objetar los requerimientos de producción de documentos bajo el único argumento de que el patrono ya posee dichos documentos carece de fundamento, particularmente cuando, entre los documentos solicitados, se encontraban aquellos que la parte utilizará en el juicio para sustentar sus alegaciones. Asimismo, destacó que, si bien el procedimiento sumario dispuesto por la Ley Núm. 2, *infra*, está diseñado para agilizar la adjudicación de las reclamaciones de los trabajadores, el proceso judicial debe garantizar las mismas salvaguardas procesales aplicables a cualquier otro procedimiento, incluyendo la prevención de sorpresas relacionadas con la prueba el día del juicio. En virtud de lo anterior, solicitó que se declarara "No Ha Lugar" la solicitud de vista urgente.

El 28 de enero de 2026, el TPI emitió una *Resolución Interlocutoria* mediante la cual declaró "Ha Lugar" la **"Oposición a Solicitud de Vista y Solicitud de Imposición de Sanciones"** presentada por Kryonyx. Asimismo, impuso al peticionario una sanción económica de $250.00 a favor de Kryonyx, además del pago de los gastos ocasionados por su incomparecencia a la deposición.

Así las cosas, el 24 de febrero de 2026, el señor Vera Soto presentó una **"Moción Informativa sobre Envío de Toma de Deposición"**, mediante la cual indicó que remitió al recurrido dos (2) "**Avisos de Toma de Deposición Subpoena Duces Tecum**", señaladas para el 31 de marzo de

2026. Uno de ellos, dirigido al Sr. Moisés López Rodríguez, director de ventas de Kryonyx y otro a la Sra. Migdalia Nuñez Hernández, *Comptroller & Human Resources Officer*. Al día siguiente, Kryonyx presentó su **"Oposición a Avisos de Toma de Deposición y Solicitud de Orden de Protección"**, en la cual destacó que la Sección 3 de la Ley Núm. 2, *infra*, dispone que ninguna de las partes podrá presentar más de un interrogatorio, salvo que concurran circunstancias excepcionales que, a juicio del tribunal, justifiquen la autorización de un interrogatorio o deposición adicional. En ese sentido, señaló que el Peticionario había remitido previamente a Kryonyx un interrogatorio y requerimiento de producción de documentos el 10 de noviembre de 2025. Asimismo, alegó que el señor Vera Soto no ha demostrado ni alegado la existencia de circunstancias excepcionales que justifiquen la celebración de dos (2) deposiciones adicionales luego de haber utilizado dichos mecanismos de descubrimiento de prueba. Ante tales planteamientos, solicitó la expedición de una orden de protección al amparo de la Regla 23.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.2. Finalmente, el 27 de febrero de 2026, el foro *a quo* declaró "Ha Lugar" la "**Solicitud de Orden de Protección**" presentada por Kryonyx y, en consecuencia, lo relevó de comparecer a las deposiciones objeto de controversia.

Inconforme con lo anteriormente resuelto, el Peticionario acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> 1. Erró el Tribunal de Primera Instancia al declarar Con Lugar una moción de orden protectora de descubrimiento de prueba sin previa oportunidad de que la parte adversa se expresara.
>
> 2. Erró el Tribunal de Primera Instancia al disponer que en un proceso sumario el obrero querellante no puede tomar deposiciones a ejecutivos de la empresa querellada.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020);

Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR __ (2023); 2023 TSPR 145. Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4

LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

Sabido es que la Ley Núm. 2, *supra*, instituye un procedimiento sumario de adjudicación de pleitos laborales dirigidos a la rápida consideración y adjudicación de aquellas reclamaciones de empleados contra sus patronos relativos a salarios, beneficios y derechos laborales. De ahí que se le imponga una carga procesal más onerosa a la parte con mayores medios económicos, el patrono. Rivera v. Insular Wire Products Corp., 140 DPR 912, 924 (1996).

Así pues, el legislador implantó la política pública estatal de proteger el empleo y desalentar los despidos sin justa causa. A fin de lograr la consecución de dichos propósitos, el estatuto establece: (1) términos cortos para presentar la contestación de la querella o demanda; (2) criterios para conceder una sola prórroga para la contestación de la querella o demanda; (3) un mecanismo para diligenciar el emplazamiento del patrono; (4) el proceso para presentar defensas y objeciones; (5) límites a la utilización de los mecanismos de descubrimiento de prueba; (6) la aplicabilidad limitada de las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con el procedimiento sumario; (7) que ninguna de las partes pueda someter más de un interrogatorio o deposición, ni está autorizado a tomar una deposición a la otra parte después de haber sometido un interrogatorio ni viceversa, excepto cuando concurran circunstancias excepcionales; y (8) la obligación de los tribunales de emitir sentencia en rebeldía cuando el patrono incumple con el término para contestar la querella o demanda. 32 LPRA sec. 3120; *véase*, Vizcarrondo v. MVM, Inc. *et al.*, 174 DPR 921, 929 (2008).

Finalmente, y en lo concerniente a la controversia de autos, la Sección 3 de la referida pieza legislativa, dispone lo siguiente:

[…]

[N]inguna de las partes podrá someter más de un interrogatorio o deposición ni podrá tomar una deposición a la otra parte después que le haya sometido un interrogatorio, ni someterle un interrogatorio después que le haya tomado una deposición, **excepto que medien circunstancias excepcionales que a juicio del tribunal justifiquen la concesión de otro interrogatorio u otra deposición**. **No se permitirá la toma de deposición a los testigos sin la**

**autorización del tribunal, previa determinación de la necesidad de utilizar dicho procedimiento**. 32 LPRA sec. 3120 (énfasis suplido).

[…]

En otras palabras, la disposición limita el uso de los mecanismos de descubrimiento de prueba dentro del procedimiento sumario, de manera que las partes no puedan utilizarlos de forma reiterada o indiscriminada. Así, únicamente se permitirá recurrir a interrogatorios o deposiciones adicionales cuando el tribunal determine que existen circunstancias excepcionales que justifiquen apartarse de dicha limitación, garantizando así la celeridad del proceso sin menoscabar las garantías procesales de las partes.

**III.**

En el presente caso, el Peticionario nos solicitó la revocación de la *Orden* del TPI mediante la cual se declaró "Ha Lugar" la "**Solicitud de Orden Protección**" presentada por Kryonyx.

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados. En síntesis, el señor Vera Soto alega que el foro de instancia erró al: (1) declarar "Con Lugar" la orden protectora de descubrimiento de prueba sin previa oportunidad de expresarse y (2) al disponer que en un proceso sumario el obrero no puede tomar deposiciones a ejecutivos de la empresa. Veamos.

Del expediente ante nuestra consideración se desprende que el 27 de junio de 2025, el señor Vera Soto presentó una **"Querella"** contra Kryonyx y otros codemandados reclamando el pago de ciertas comisiones alegadamente adeudadas. Tras diversos trámites procesales impertinentes a la controversia de autos, incluyendo el intercambio de interrogatorios, requerimientos de documentos y disputas sobre deposiciones, el 24 de febrero de 2026, el Peticionario presentó una **"Moción Informativa sobre Envío de Toma de Deposición"**, mediante la cual notificó el envío de dos *Avisos de Toma de Deposición Subpoena Duces Tecum* dirigidos a empleados de Kryonyx, específicamente al Moisés López Rodríguez, director de ventas de Kryonyx, y a la Sra. Migdalia Nuñez Hernández, comptroller de dicha entidad.

**Es menester destacar que, en su escueta comparecencia, el Peticionario no expuso las razones o justificaciones por las cuales eran necesarias la toma de dichas deposiciones. En otras palabras, el señor Vera Soto falló en poner en posición al TPI para que dicho foro diera su consentimiento para la toma de las deposiciones de los empleados del Recurrido**.

En respuesta, Kryonyx presentó una **"Oposición a Avisos de Toma de Deposición y Solicitud de Orden de Protección"**, alegando que, conforme a la Sección 3 de la Ley Núm. 2, *supra*, el Peticionario ya había utilizado mecanismos de descubrimiento de prueba y no había demostrado la existencia de circunstancias excepcionales que justificaran la celebración de deposiciones adicionales. Finalmente, el 27 de febrero de 2026, el foro *a quo* declaró "Ha Lugar" la solicitud de orden protectora y relevó a los testigos de comparecer a las deposiciones señaladas.

Tras un análisis ponderado y cuidadoso del expediente ante nuestra consideración, incluyendo la "**Querella**", la "**Solicitud de Orden de Protección**" y la *Orden* recurrida, hemos arribado a la conclusión de que el TPI no erró al declarar "Ha Lugar" la referida orden protectora y, en consecuencia, impedir la toma de las deposiciones objeto de la presente controversia. Nos explicamos.

De entrada, debemos enfatizar en que somos conscientes de que existen limitadas instancias excepcionales bajo las cuales se justifica nuestra intervención apelativa para evaluar determinaciones interlocutorias del TPI en pleitos ventilados bajo la Ley Núm. 2, *supra*. Cónsono con ello, el Tribunal Supremo de Puerto Rico ha resuelto que al amparo del esquema normativo de dicha medida legislativa se justifica nuestra intervención cuando, entre otras cosas, la revisión inmediata evite una grave injusticia. Dávila, Rivera v. Antilles Shipping, Inc., *supra*, pág. 497. En su escrito, el Peticionario amparó la revisión de este Tribunal bajo la premisa de que constituiría una fracaso irremediable a la justicia no evaluar los méritos de su petitorio, pues esperar al recurso de apelación, luego de dictada la sentencia en el caso, lo dejaría desprovisto de remedio alguno.

Bajo ese esquema, podríamos coincidir con el señor Vera Soto que esperar a la apelación en una controversia como la presente hubiera implicado un irremediable fracaso a la justicia. Así pues, entendemos necesaria nuestra intervención excepcional a esta etapa de los procedimientos y adjudicar los méritos de los planteamientos esgrimidos por el Peticionario. Establecido lo anterior, evaluamos la procedencia de los argumentos presentados ante nos.

Así pues, es menester destacar que la Ley Núm. 2, *supra*, establece un procedimiento sumario dirigido a propiciar la pronta y eficiente adjudicación de reclamaciones laborales. En armonía con dicho propósito, el estatuto limita la utilización de ciertos mecanismos de descubrimiento de prueba, incluyendo la presentación de interrogatorios y la toma de deposiciones, salvo que concurran circunstancias excepcionales que, a juicio del tribunal, justifiquen su adicional utilización.

Por ello, la Sección 3 de la Ley Núm. 2, *supra*, claramente establece que la toma de deposiciones a testigos debe ser autorizada por el Tribunal, siempre que la parte que interesa tomarlas justifique su necesidad. No podemos perder de perspectiva que el alto foro judicial resolvió que "no están permitidas las deposiciones de los testigos, **salvo que el tribunal dé su consentimiento, siempre y cuando se haya justificado la necesidad para ello**". León Torres v. Rivera Lebrón, 204 DPR 20, 32 (2020) (énfasis suplido).

Tomando como norte el esquema legislativo y jurisprudencial aplicable a la controversia que nos ocupa, es más que evidente que el señor Vera Soto incumplió con exponer las razones por las cuales la toma de las deposiciones en cuestión eran necesarias, de manera que el TPI estuviera en posición de permitirlas. Un examen de la "**Moción Informativa sobre envío de Aviso Toma de Deposición**" revela que el Peticionario solo se limitó informar su intención de tomar dichas deposiciones, sin exponer justificación alguna para las mismas. No fue sino hasta la presentación del recurso de *certiorari* que el señor Vera Soto hizo alusión a las razones por las cuales las aludidas deposiciones eran necesarias.

En consecuencia, a la luz de la Sección 3 de la Ley Núm. 2, *supra*, y de la casuística aplicable al caso, somos de la opinión de que el TPI no abusó de su discreción al declarar "Ha Lugar" la "**Solicitud de Orden de Protección**" presentada por Kryonyx y al relevar a los testigos de comparecer a las deposiciones señaladas. Nótese que el Peticionario falló en producir aquellos fundamentos en los que basó su intención de tomar las deposiciones y poner al TPI en condiciones de acoger su solicitud, y esperó para exponerlas a nivel apelativo. Por tanto, tanto bajo el esquema laboral aplicable al caso, como al amparo de la máxima de derecho apelativo que proscribe que evaluemos argumentos que no fueron traídos ante la consideración del foro de instancia, estamos impedidos de acoger la teoría del señor Vera Soto.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen,

Se devuelve el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones